# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SLEEP TIGHT DIAGNOSTIC CENTER, LLC, | : <br> : <br> : |
| Plaintiff, | :    Civil Action No.: 18-03556 (FLW)(DEA) |
| v. | : |
|  | :    **OPINION** |
| AETNA INC., AETNA HEALTH INC., AND AETNA LIFE INSURANCE. COMPANY, | : <br> : <br> : |
| Defendants. | : <br> : |

**WOLFSON, Chief Judge**:

       Before the Court is a motion to dismiss filed by Defendants Aetna, Inc., Aetna Health Inc., and Aetna Life Insurance Company ("Aetna" or "Defendants"). Sleep Tight Diagnostic Center ("Sleep Tight" or "Plaintiff"), a provider of sleep study services, brings this suit to recover insurance benefits related to a procedure which it performed on twenty-five patients (the "insureds") who are insured under employee health insurance plans (the "Plans"), all of which are administered by Aetna, with the exception of one.[1] In the suit, Plaintiff asserts the following state law claims: (Count 1) breach of contract, (Count 2) quantum merit, (Count 3) promissory estoppel, and (Count 4) negligent misrepresentation. In its dismissal motion, Aetna raises the following arguments: Plaintiff's state law claims with respect to nineteen of the insureds are preempted under the Employee Retirement Income Security Act ("ERISA"); Plaintiff lacks standing to seek benefits on behalf of thirteen of the insureds because their Plans contain anti-assignment provisions; and

---

[1]      The insureds include the following individuals: A.K., A.O., C.A., C.W., G.J., H.H., J.B., J.F., J.W., K.B., L.F., M.P., R.B., R.F., Ri. M., Rob. M., Rog. M., S.B., T.C., A.T., A.Y., P.D., R.T., S.L., and M.T.

Plaintiff has failed to exhaust its administrative remedies under ERISA. In the alternative, Aetna contends that Plaintiff fails to state a cognizable cause of action. For the reasons expressed herein, Aetna's motion to dismiss is **GRANTED** in part and **DENIED** in part as follows: the claims relating to G.J., H.H., J.F., J.W., L.F., M.P., R.B., Ri. M., Rog. M., S.B., T.C., P.D., R.T., and M.T. are dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims concerning A.T., A.Y., and S.L. The Motion is denied as to the claims relating to A.K., A.O., C.A., C.W., J.B., K.B., R.F., and Rob. M.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Unless otherwise noted, the facts are drawn from Plaintiff's First Amended Complaint ("FAC") and are assumed to be true for the purpose of this motion. Sleep Tight is an out-of-network provider of sleep study services that is organized, and exists, under the laws of the State of Texas. FAC, at ¶ 1. Aetna, Inc., Aetna Health Inc., and Aetna Life Insurance Company are administrators of all of the Plans but one, and they are based in Pennsylvania, New Jersey, and Connecticut, respectively. *Id*. at ¶¶ 2-4.

During February 24, 2016 through August 9, 2016, Sleep Tight performed, in Texas, a polysomnography on each of the insureds, a sleep study that diagnoses sleep disorders.[2] *Id*. at ¶ 16. The insureds each completed an "Insurance Verification Form" before undergoing that procedure, and identified Aetna as the insurance company which administered their respective Plans. *Id*. at ¶¶ 17-18. According to Sleep Tight, it then contacted Aetna and confirmed both its eligibility "to be paid" as an out-of-network provider, and the "availability of benefits" for the required treatments for the insureds. *Id*. at ¶¶ 19-20. Sleep Tight alleges that Aetna also provided

---

[2]      More specifically, as explained in the FAC, a polysomnography is a test which records "brain waves, the oxygen level in blood, heart rate and breathing, . . . eye and leg movements," as well as "sleep stages and cycles to identify if or when sleep patterns are disrupted and why." FAC, ¶ 16.

information which related to the Plans, in order to verify the amount in benefits payable for services rendered, including: (a) the reimbursement methodology for out-of-network services; (b) the applicable patient cost sharing obligations; and (c) the annual out-of-pocket maximums. *Id.*

Despite having allegedly received confirmation, Sleep Tight avers that Aetna neither provided, nor did its representations constitute, "a guaranty of payment" for services rendered. *Id.* at ¶ 24. Nevertheless, after the insureds executed an assignment of benefits to Sleep Tight, it administered the sleep studies in question and submitted "CMS-1500" claim forms to Aetna. *Id.* at ¶ 25. The forms specifically referenced the assignment of benefits and, collectively, sought more than $445,551.00 in payment from Aetna, for services rendered between February 24, 2016 and August 9, 2016. *Id.* at ¶¶ 24-27. However, in a document titled "Explanation of Payment," Aetna denied Sleep Tight's claims, on the basis that: "[t]his provider [Sleep Tight] was not certified/eligible to be paid for this procedure/service on this date of service. Note: Refer to the 835 Healthcare Policy Identification Segment (loop 2100 Service Payment Information REF), if present." *Id.* at ¶ 28.

Sleep Tight sought to reverse Aetna's adverse benefit determinations. More specifically, on May 3, 2016, Sleep Tight allegedly submitted a written appeal directly to Aetna, pursuant to a conversation with Liz, an Aetna customer service representative. *Id.* at ¶ 30. Then, on June 10, 2016, according to Sleep Tight, it received a letter from James C. Crumlish, Esq., an attorney whose firm represents Aetna, in which he instructed Sleep Tight to direct all further inquires to either himself or his colleague, Colin O'Boyle, Esq. *Id.* at ¶ 31. Thereafter, on an unspecified date, Sleep Tight's Administrator provided Mr. Crumlish with a copy of its "provisional accreditation" from the American Academy of Sleep Medicine ("AASM"). *Id.* Moreover, during a conversation with Mr. Crumlish, the administrator expressed her frustration that Mr. Crumlish and his staff had

failed to provide a substantive update in connection with the status of Sleep Tight's "reprocessing request." *Id*. at ¶¶ 30, 32.

On August 10, 2016, Mr. Crumlish requested proof of Sleep Tight's continued provisional accreditation with the AASM. *Id*. at ¶ 33. In addition, Sleep Tight alleges that Mr. Crumlish advised that Sleep Tight's claims "for healthcare covered benefits will be processed for services rendered as of July 8, 2016, subject to the member's relevant coverage conditions and Aetna's coverage policies." *Id*. However, because Aetna did not reprocess the disputed claims, Sleep Tight alleges that it sent a letter, through counsel, to Mr. Crumlish on February 7, 2017. *Id*. at ¶¶ 34-35. The letter specified the amount owed to Sleep Tight, and it requested information from Aetna that pertained to its adverse benefit decisions. *Id*. at ¶ 35. But, Sleep Tight's efforts allegedly failed to elicit a response from either Mr. Crumlish or his colleagues, and, on April 25, 2017, after a conversation with Mr. Crumlish's paralegal, Sleep Tight resubmitted its earlier correspondence by email. *Id*. However, that, too, was allegedly ignored. *Id*.

On March 14, 2018, Sleep Tight filed the instant action against Aetna, alleging wrongful denial of benefits pursuant to ERISA. On October 4, 2018, Sleep Tight amended its Complaint to assert four common law causes of action under Texas law, including: (1) breach of contract; (2) quantum meruit; (3) promissory estoppel; and (4) negligent misrepresentation. In the instant matter, Aetna moves for dismissal on the basis of preemption, standing, and the failure to exhaust. Alternatively, Aetna argues that Sleep Tight has failed to assert a valid claim under Texas law. Sleep Tight opposes the motion.

## II.    STANDARD OF REVIEW

A court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]") (quotations omitted). Thus, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a motion to dismiss for failure to state a claim, district courts engage in a three-step progression.

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 662. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 664. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*. This means that the inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are

sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.2011). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" indeed, mere consistency with liability is insufficient. *Iqbal*, 556 U.S. at 678. Moreover, a plaintiff may not be required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (3d Cir.2009).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) *cert. denied*, 565 U.S. 817 (2011). Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. DISCUSSION

In the instant action, Aetna moves for dismissal on the basis of four separate grounds. First, Aetna argues that Sleep Tight's state law claims relating to the nineteen ERISA-governed Plans are expressly preempted under the statute. Second, Aetna contends that Plaintiff lacks standing to pursue benefits under the thirteen Plans which include anti-assignment provisions. Third, Aetna maintains that Plaintiff has failed to exhaust its administrative remedies before filing this suit. Lastly, even if Plaintiff's common law causes of action are properly before this Court, according to Aetna, Sleep Tight has failed to assert a valid claim under Texas law. Each argument is discussed in turn.

## A.  Express Preemption

I first address whether ERISA preempts Plaintiff's state law claims based on the allegations in the FAC. Aetna contends that ERISA governs the Plans of nineteen insureds, including: A.K., A.O., C.A., C.W., G.J., H.H., J.B., J.F., J.W., K.B., L.F., M.P., R.B., R.F., Ri. M., Rob. M., Rog. M., S.B., and T.C. Declaration of Colin J. O'Boyle, Esq., ("O'Boyle Dec.") ¶ 11.[3] As such, Aetna maintains that Plaintiff's state law claims with respect to these Plans are subject to ERISA's preemption provision.

---

[3]     The Court may consider the contents of Aetna's sworn declaration on this motion, because it references the pertinent provisions from the Plans of the twenty-five insureds, from which Plaintiff's claims arise. *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (holding that, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (citation omitted). Indeed, in ruling on a motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Notably, Plaintiff, in no way, disputes the accuracy of Aetna's sown declaration, with respect to the Plan language, on this motion. *See, e.g., Plastic Surgery Ctr. v. Aetna Life Ins. Co.*, No. 17-13467, 2018 U.S. Dist. LEXIS 166514, at *12 (D.N.J. Sept. 26, 2018) (considering ERISA plan documents which were undisputed on a motion to dismiss).

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). ERISA has expansive preemption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, to keep the regulation of benefit plans in the federal domain. *Id.* ("ERISA includes expansive pre-emption provisions, . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'") (quoting *Alessi v. Raybestos-Manhattan*, Inc., 451 U.S. 504, 523 (1981)); *see also New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014) ("Congress enacted ERISA to ensure that benefit plan administration was subject to a single set of regulations and to avoid subjecting regulated entities to conflicting sources of substantive law."). Indeed, the Supreme Court has emphasized that ERISA possesses "extraordinary pre-emptive power." *Metro. Life. Ins. Co. v. Taylor*, 481 U.S. 58. 65 (1987). The ultimate objective of federal preemption under ERISA is to "eliminate the threat of conflicting and inconsistent State and local regulation." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995).

The express preemption provision, ERISA § 514(a), preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" covered under the statute. 29 U.S.C. § 1144(a) (emphasis added). State laws "relate to" an ERISA plan if the law either has a "reference to" or has a "connection with" the plan at issue. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293-94 (3d Cir. 2014). Pursuant to *Ingersoll-Rand*, the Third Circuit instructs that a state law claim relates to an employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan." *1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d

401, 406 (3d Cir. 1992) (citations omitted). Nevertheless, the Supreme Court has cautioned that if the term "'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course." *N.Y. State Conference of Blue Cross.*, 514 U.S. at 655. Thus, courts "look to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.'" *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83-84 (3d Cir. 2012) (quoting *California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 325 (1997)).

For the purpose of ERISA preemption, "State law" is "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," 29 U.S.C. § 1144, "and the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987) (quoting *Shaw*, 463 U.S. at 98). "State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Iola*, 700 F.3d at 83. For example, as relevant here, the Third Circuit has noted that claims for "bad faith and breach of contract . . . ordinarily fall within the scope of ERISA preemption, if such claims relate to an ERISA-governed benefits plan." *Early v. United States Life Ins. Co.*, 222 Fed. Appx. 149, 151-52 (3d Cir. 2007); *see also Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001) (observing that "suits against . . . insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)"); *Ford v. UNUM Life Ins. Co. of Am.*, 351 Fed. Appx. 703, 706 (3d Cir. 2009) (holding that the plaintiff's state law claims for breach of contract, negligence, and intentional infliction of emotional distress were preempted under ERISA). At bottom, "any state-law cause of action that duplicates, supplements, or supplants the

ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Davila*, 542 U.S. at 209 (citation omitted).

Here, Plaintiff asserts four common law causes of action under Texas state law, including: (1) breach of contract; (2) quantum meruit; (3) promissory estoppel; and (4) negligent misrepresentation. More specifically, in its breach of contract claim, Plaintiff alleges that Aetna's "benefits eligibility verifications" created an agreement, obligating Aetna to compensate Sleep Tight for the sleep studies rendered to the insureds. FAC, ¶¶ 45-49. In its quantum meruit claim, Plaintiff alleges that it furnished valuable services to the insureds, for which Aetna must compensate Sleep Tight. *Id*. at ¶¶ 50-52. In its promissory estoppel claim, Plaintiff alleges that Aetna's "benefits eligibility verifications . . . represented a promise to Sleep Tight," and Aetna "should have foreseen that Sleep Tight would re[l]y upon" that promise. *Id*. at ¶¶ 53-57. Finally, in its negligent misrepresentation claim, Plaintiff alleges that "Aetna did not exercise reasonable care or competence in obtaining or communicating the information it conveyed to Sleep Tight during the benefits eligibility verifications," and, as a result, Sleep Tight "has sustained damages." *Id*. at ¶¶ 59-63.

While the Court, normally, would examine each cause of action, this inquiry need not be performed on this motion, because the claims at issue arise from Aetna's alleged obligation to reimburse Sleep Tight. Sleep Tight is disputing its right to be paid for a medical procedure that it administered to patients who were insured by an ERISA plan, such that its claims "relate to," "reference," or, at the very least, share a "connection with" an employee benefit plan, as defined under the statute. *See* 29 U.S.C. § 1144(a). As such, Plaintiff's claims "seek reimbursement of billed medical charges and relate to challenges to the administration of benefits rather than the quality of the medical treatment performed." *N. Jersey Brain & Spine Ctr. v. Connecticut Gen.*

*Life Ins. Co.*, No. 10-4260, 2011 U.S. Dist. LEXIS 119758, at *3 (D.N.J. Oct. 6, 2011) (quotations omitted). Significantly, disputes of this nature fall "squarely within ERISA's ambit." *Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield*, No. 17-07534, 2018 U.S. Dist. LEXIS 90734, at *5 (D.N.J. May 31, 2018); *see also Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 149-50 (3d Cir. 2007) (reasoning that the calculation and payment of a benefit due to a plan participant goes to the essential function of an ERISA plan).

Indeed, courts within this district have consistently dismissed claims for breach of contract, quantum meruit, promissory estoppel, and negligence when they arise from an ERISA-governed plan on the basis of preemption. *Menkes*, 762 F.3d at 294 (claims alleging breach of contract, bad faith, or negligence in connection with the denial of benefits under an ERISA-covered plan are preempted under ERISA, because those claims "are premised on the existence of the plan"); *Estate of Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d 461, 468-69 (D.N.J. 2015) (finding that the plaintiffs' "claims for negligence and breach of contract 'relate[d] to' the Plan for purposes of ERISA preemption," because they were based on the denial of a claim for benefits under an ERISA-governed plan); *N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co.*, No. 10-4260, 2011 U.S. Dist. LEXIS 119762 (D.N.J June 30, 2011) ("[P]laintiff's claims for promissory estoppel and unjust enrichment seek reimbursement of billed medical charges and relate to challenges to the administration' of benefits rather than the quality of the medical treatment performed'.") (citing *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d. Cir. 2001)); *D'Alessandro v. Hartford Life & Acc. Ins. Co.*, No. 09-115, 2009 U.S. Dist. LEXIS 37048, at *2 (D.N.J. May 1, 2009) (finding that ERISA preempted the plaintiff's state law claims for breach of contract and bad faith denial of disability benefits, since "Plaintiff is essentially seeking to claim benefits under the long-term disability plan."); *Majka v. Prudential Ins. Co. of Am.*, 171 F. Supp.

2d 410, 414 (D.N.J. 2001) (holding that ERISA preempted the plaintiff's claims that she "was entitled to long-term disability benefits under the terms of the Plan and that Prudential's failure to provide those benefits constituted breach of contract and of the duty of good faith and fair dealing.").

Notwithstanding these clearly-established principles, Plaintiff maintains that its state law claims are not preempted, because it does not need to plead that an ERISA plan exists to prevail. In that regard, Sleep Tight contends that, since Aetna confirmed "Sleep Tight's eligibility to receive payment, Sleep Tight's medical services qualifications for reimbursement, and the price model which Aetna would rely upon in reimbursing Sleep Tight," Plaintiff's common law claims are not "predicated on the existence of an ERISA plan[.]" Pl.'s Opp., at 22-23. I, however, disagree with this position, as Sleep Tight has failed to properly allege a separate contract between Sleep Tight and Aetna, independent of the ERISA plans.

*Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004), addressed the issue of ERISA preemption within the context of a separately pled contractual agreement. More specifically, the Third Circuit, there, found that the plaintiff in-network hospital could pursue state law claims against an ERISA welfare benefit plan administrator for failure to pay for claims based upon an "independent" contractual obligation. In that case, the in-network hospitals, organized by an independent consultant, Magnet, Inc., had entered into a "Subscriber Agreement" that provided discounted rates to the plan administrator since hospitals did not contract directly with it. *Id.* This Subscriber Agreement expressly stated that "if Subscriber fails to pay within the appropriate time frame, the Subscriber acknowledges that it will lose the benefit of the MagNet discounted reimbursement rate and that Network Hospital is then entitled to bill and collect from Subscriber and the Eligible Person *its customary*

*rate for services rendered.*" *Id.* (emphasis added). The administrator did not pay within the appropriate time frame, and the hospital brought suit for breach of contract, demanding payment at its customary rate, as provided in the Subscriber Agreement. The court in *Pascack* concluded that the medical provider was seeking to enforce this agreement, rather than the plan itself, and as such a "resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan." *Id.* at 402. The court continued, "[t]he Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself." *Id.*

Here, Plaintiff's allegations in the FAC belie its position. Indeed, Plaintiff's state law claim allegations arise from certain "benefit eligibility verifications" that relate to the Plans, as opposed to a separately executed agreement between Sleep Tight and Aetna. In the Amended Complaint, Plaintiff references the Plans time and time again, without once pointing to an independent contract that governs its relationship with Aetna. In fact, Plaintiff asserts that Aetna confirmed its eligibility to "provid[e]," "perform," "and be paid . . . *under the Plans*," for the sleep studies which it rendered to the insureds during the relevant time period. FAC, ¶ 19. (emphasis added). In that connection, benefits owed were determined by utilizing Aetna's "reimbursement methodology for out-of-network services," instead of, for example, Sleep Tight's own "customary rate for services rendered." FAC, ¶ 21. In that regard, Plaintiff does not allege that the amount in benefits, purportedly agreed upon, for its services were calculated through a method which operated independently of the Plans. Nor is such a finding supported by the Amended Complaint, particularly since, in calculating benefits, Sleep Tight explicitly alleges that various provisions from the Plans were accounted for, such as: "the applicable patient cost sharing *under each Plan*, including deductibles, co-payments, and/or co-insurances, and . . . the annual out-of-pocket

maximum . . . *under each patient's Plan*." *Id*. Accordingly, Plaintiff's own allegations support the finding that, in resolving its claims, the Court must interpret the terms and provisions of the ERISA plans, not a separate contract. *Atl. Shore Surgical Assocs. v. United Healthcare/Oxford*, No. 18-9506, 2019 U.S. Dist. LEXIS 14413, at *1 (D.N.J. Jan. 23, 2019) (finding that the plaintiff's claims were subject to preemption, because the oral preauthorization agreement for services rendered "was premised on the existence of an ERISA plan[.]"); *Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*, No. 17-08697, 2018 U.S. Dist. LEXIS 96814, *at 15 (D.N.J. June 7, 2018) (holding that a party "cannot use [a] purported independent preauthorization for services to circumvent ERISA preemption.").

In addition, without any substantive discussion, Plaintiff simply cites to various non-binding, circuit court cases[4] for the general proposition that claims asserted by a "third-party provider" against an insurance company do not implicate ERISA's goal of protecting plan participants and beneficiaries. However, those decisions are distinguishable, as they involve state law claims which are truly independent of the underlying ERISA plan. Conversely, for the previously described reasons, Plaintiff's causes of action have a connection, or are related, to the ERISA plans of the insureds, such that Plaintiff's right to recovery, if it exists, cannot be determined without reference to their terms and provisions. Therefore, pursuant to the allegations in the FAC, I find that Plaintiff's common law causes of action with respect to the nineteen ERISA governed Plans are expressly preempted by ERISA, as to the claims of the following insureds:

---

[4]     More specifically, these include the following circuit court decisions: *Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 605 (8th Cir. 1996); *The Meadows v. Emp'rs Health Ins.*, 47 F.3d 1006, 1009 (9th Cir. 1995); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533-34 (11th Cir. 1994); *Hospice of Metro Denver, Inc. v. Grp. Health Ins., Inc.*, 944 F.2d 752, 756 (10th Cir. 1991).

A.K., A.O., C.A., C.W., G.J., H.H., J.B., J.F., J.W., K.B., L.F., M.P., R.B., R.F., Ri. M., Rob. M., Rog. M., S.B., and T.C.

## B. Anti-Assignment

Aetna argues that thirteen of the Plans contain anti-assignment provisions, precluding the following insureds from transferring any rights under their respective policies: G.J., H.H., J.F., J.W., L.F., M.P., R.B., Ri. M., Rog. M., S.B., T.C., P.D., and R.T. O'Boyle Dec., Esq., ¶ 11. Therefore, according to Aetna, Plaintiff lacks standing to pursue benefits under these Plans.

As a preliminary matter, I note that courts regularly enforce anti-assignment provisions within the context of ERISA-governed plans. Indeed, the majority of appellate courts, including the Third Circuit, have found that "nothing in ERISA forecloses plan administrators from freely negotiating anti-assignment clauses, among other terms." *Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018) ("We now join that consensus and hold that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable."); *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017); *Physicians Multispeciality Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295-96 (11th Cir. 2004); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores*, 298 F.3d 348, 352 (5th Cir. 2002); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 228-29 (1st Cir. 1998); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1465 (10th Cir. 1995); *Davidowitz v. Delta Dental Plan, Inc.*, 946 F.2d 1476, 1479-81 (9th Cir. 1991).

Notwithstanding the anti-assignment clauses in the Plans at issue, Plaintiff argues that Defendants have waived their right to enforce the provisions, on the basis of their course of conduct with Sleep Tight. According to Plaintiff, it "attempted to contact Aetna[] numerous times inquiring

as to the denials of it claims, submitted written appeals pursuant to conversations with Aetna's representatives, . . . and engaged in a course of dealing with Aetna's legal representative, a Pennsylvania law firm, for over six months." Pl.'s Opp., at 32. Plaintiff further maintains that it retained "its own counsel to plead its case towards Aetna's legal team[.]" *Id*. I, however, disagree with Sleep Tight's position, as these circumstances are not sufficient to constitute waiver pursuant to New Jersey law.[5]

Under New Jersey law,[6] waiver is defined as "an intentional relinquishment of a known right." *Knorr v. Smeal*, 178 N.J. 169, 177 (2003) (citation omitted). "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it." *Id*. (citation omitted). Such words or acts however, must be "voluntary, clear and decisive," such that they imply "an election to forego some advantage which the waiving party might have insisted on." *Deerhurst Estates v. Meadow Homes, Inc.*, 64 N.J. Super. 134, 145 (App. Div. 1960), *certif. denied*, 34 N.J. 66, 167 A.2d 55 (N.J. 1961); *Cacon, Inc. v. Rand Envtl. Servs.*, 2006 N.J. Super. Unpub. LEXIS 1460, at *8 (App. Div. Aug. 21, 2006) ("Waiver must be voluntary and there must be a clear act showing the intent to waive the right.") (citation omitted).

---

[5] Contrary to Plaintiff's contentions, motions to dismiss on the basis of a party's standing within the context of an ERISA action are routinely granted within this District. *See, e.g.*, *IGEA Brain & Spine, P.A. v. Blue Cross & Blue Shield of Minn.*, No. 16-5844, 2017 U.S. Dist. LEXIS 72663, at *1-2 (D.N.J. May 12, 2017); *Am. Orthopedic & Sports Med.*, No. 16-8988, 2017 U.S. Dist. LEXIS 26674, at *1-3; *Advanced Orthopedics & Sports Med.*, 2015 U.S. Dist. LEXIS 93855, at *3-6; *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 U.S. Dist. LEXIS 91815, at *7-8 (D.N.J. July 15, 2015); *Prof'l Orthopedic Assocs., PA v. CareFirst BlueCross BlueShield*, No. 14-4486, 2015 U.S. Dist. LEXIS 84996, at *1-4 (D.N.J. June 30, 2015); *Menkowitz v. Blue Cross Blue Shield of Ill.*, No. 14-2946, 2014 U.S. Dist. LEXIS 151232, at *1-3 (D.N.J. Oct. 23, 2014); *Torpey v. Blue Cross Blue Shield of Tex.*, No. 12-7618, 2014 U.S. Dist. LEXIS 11412, at *1-5 (D.N.J. Jan. 30, 2014).

[6] I note that neither party disputes the application of New Jersey law within the context of waiver, as they both rely upon the laws of New Jersey to support their respective positions on this motion.

Moreover, "[t]he burden of proving waiver is upon the party asserting it." *Cacon, Inc.*, 2006 N.J. Super. Unpub. LEXIS 1460, at *8 (citation omitted).

Here, Plaintiff has not sufficiently alleged a course of dealing to satisfy its burden of proving waiver. Indeed, although Sleep Tight asserts that every claim which it submitted on the behalf of the insureds "explicitly put Aetna on notice of its having accepted assignment from its patients," FAC, ¶ 27, the Third Circuit has found that the "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal" does not show a clear, unequivocal, and decisive act of waiver. *Am. Orthopedic & Sports Med.*, 890 F.3d at 454; *Emami v. Quinteles IMS*, No. 17-3069, 2017 U.S. Dist. LEXIS 154774, at *3 (D.N.J. Sept. 21, 2017) ("[I]t is now well-settled law in the District of New Jersey that the Plan did not waive the Anti-Assignment Clause by dealing directly with the [m]edical [p]rovider in the claim review process, or by directly remitting payment to the [m]edical [p]rovider."); *Enlightened Sols., LLC v. United Behavioral Health*, No. 18-6672, 2018 U.S. Dist. LEXIS 205799, at *13 (D.N.J. Dec. 4, 2018) (holding that "the routine processing of claims does not amount to an insurer's waiver to enforce an anti-assignment clause."). Thus, the initial denial of Plaintiff's benefit claims is not probative to the waiver analysis.

Contrary to Plaintiff's contentions, the "failure to apprise" Sleep Tight of any invalid assignments by Aetna does not foreclose Aetna's ability to enforce the anti-assignment provisions in the Plans. Pl.'s Opp., at 32. Plaintiff contends that, following the denial of its claims, it submitted a "written appeal" to Aetna on May 3, 2016, to which Aetna did not address or provide a response. Rather, on June 10, 2016, Sleep Tight alleges that it received a letter from Aetna's legal

representative, Mr. Crumlish, instructing it to direct all of its further inquiries to Mr. Crumlish.[7] Presumably, this pertained only to the denial of Aetna's claims for benefits from February 9, 2016 through May 3, 2016, the date of its "written appeal."[8] FAC, ¶ 31. Although Plaintiff alleges that it then participated in an extensive claims review process with Mr. Crumlish, the allegations in the Amended Complaint show that, aside from two, insignificant communications which took place on an unspecified date and on August 10, 2016, Mr. Crumlish and his colleagues failed to respond or resolve Aetna's inquiries with respect to the denial of its claims in a substantive fashion. This included a letter which Sleep Tight voluntarily submitted to Mr. Crumlish on February 7, 2017, more than six months after it last communicated with him, and, once again on April 25, 2017, after having failed to previously elicit a response from Mr. Crumlish. Indeed, Sleep Tight takes the position that, time and time again, both Aetna and Mr. Crumlish "ignored each of [its] appeals[.]" FAC., ¶ 31. However, because mere "silence or inaction cannot give rise to either waiver or estoppel," the alleged failure to inform Sleep Tight of the invalid assignment in response to its inquiries, or the alleged failure to address them in any fashion, is insufficient to prove waiver under

---

[7]     To the extent that Plaintiff argues that a communication from Aetna's legal representative, in connection with a benefit claims dispute constitutes waiver, such conduct in no way suggests that Aetna has voluntarily waived its right to enforce the anti-assignment provisions which are contained in thirteen of the twenty-five Plans. Indeed, merely engaging with an assignee in a pre-suit claim process does not constitute a waiver of an anti-assignment clause. *See Middlesex Surgery Ctr. v. Horizon*, No. 14-7280, 2013 U.S. Dist. LEXIS 27542, at *13 (D.N.J. Feb. 28, 2013) ("[T]here is nothing inconsistent about . . . objecting to Plaintiff's ERISA standing after having engaged with [plaintiff] in a pre-suit claim review process. Whether Plaintiff had the right to submit a claim and pursue [an] appeal on [the beneficiaries] behalf[,] is a separate issue entirely from whether Plaintiff has the right to sue under § 502(a)."). This result is even more appropriate, where the merits of Plaintiff's "appeal" were never reached, as further discussed *infra*.

[8]     As further discussed *infra*, Plaintiff's "written appeal" to Aetna did not encompass all of the denials of its claims, as Sleep Tight continued to provide sleep study services to the insureds well beyond that date.

New Jersey law.[9] *See Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield*, No. 14-7280, 2015 U.S. Dist. LEXIS 93855, at *19 (D.N.J. July 20, 2015) (no finding of waiver where the defendant did not "raise the anti-assignment clause in response to Plaintiff's appeals."); *see also Cohen*. 820 F. Supp. 2d at 606 (no finding of waiver where the defendant failed to explicitly acknowledge an improper assignment of benefits to the plaintiff health provider).

### C. Failure to Exhaust

Lastly, Defendants maintain that Plaintiff has failed to exhaust its administrative remedies under the Plans, before filing this action. Under ERISA, claimants are required to exhaust administrative remedies prior to bringing suit to enforce terms of the plan. *D'Amico v. CBS Corp.*, 297 F.3d 287, 290-91 (3d Cir. 2002). Because ERISA requires benefit plans to provide an administrative appeals process, 29 U.S.C. § 1133, a participant of an ERISA plan may only seek judicial review once his appeal has been denied by the plan administrator. *Lewis-Burroughs v. Prudential Ins. Co. of Amer.*, No. 14-1632, 2015 U.S. Dist. LEXIS 57584, at *13 (D.N.J. Apr. 30, 2015); *see also Fontana v. Diversified Grp. Admins., Inc.*, 67 F. App'x 722, 724 (3d Cir. 2003) ("An action to recover for denial of benefits under ERISA accrues when an application for benefits is formally denied.") (citation and quotations omitted). "The ERISA exhaustion requirement is an affirmative defense, so the defendant bears the burden of proving failure to exhaust." *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. Appx. 169, 173 (3d Cir. 2015) (citing *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007)).

---

[9]     In the alternative, Aetna argues that Sleep Tight should be estopped from enforcing the anti-assignment provisions, because it "must have been aware" of the invalid assignment, and, yet, "did nothing[.]" Pl.'s Opp., at 33. I disagree. Because Sleep Tight's position is largely based on Aetna's alleged "silence or inaction," Plaintiff's estoppel argument fails for the same reasons that it has not shown waiver.

Here, Plaintiff contends that it should be deemed to have exhausted its administrative remedies pursuant to ERISA, for reasons which are similar to those which it raised in support of its waiver argument: Aetna "essentially foreclosed [its] access to" an appeals process. Pl.'s Opp., at 35. As stated, Plaintiff alleges that it submitted a "written appeal directly to Aetna" on May 3, 2016, subsequent to which, on June 10, 2016, it received a letter instructing Sleep Tight to direct all further inquiries with respect to the denial of its claims to Mr. Crumlish. FAC, ¶¶ 30-31. However, Sleep Tight alleges that Mr. Crumlish ultimately "stopped responding to [its] correspondence," including a letter which was initially sent on February 7, 2017, and then resubmitted by email on April 25, 2017. *Id.* at 35-36. In response, Defendants contend that Plaintiff has failed to show that it complied with the "actual administrative remedies," as separately set forth in the twenty-five Plans. Defs.' Reply, at 13. Without providing the pertinent provisions of the policies, Defendants argue that Plaintiff has instead created its own appeals process, thereby failing to exhaust its administrative remedies.

The Court lacks the requisite information to determine whether Sleep Tight complied with the applicable administrative remedies before the initiation of this action. In that regard, although Plaintiff alleges that it filed a "written appeal" on May 3, 2016 with Aetna, the disputed services extended beyond that date, which began on February 24, 2016 and ended on August 9, 2016. FAC, ¶ 1. Clearly, Sleep Tight's "written appeal" did not encompass all of the denials of its claims. And, because the numerous dates on which the insureds received treatment are unspecified, the exact scope of Plaintiff's "written appeal" to Aetna is uncertain. Moreover, as to Plaintiff's subsequent correspondence with Aetna's legal representative, without the applicable provisions from the Plans, the Court cannot determine if Plaintiff's efforts complied with the required exhaustion procedures. Indeed, neither party has submitted the provisions which govern the administrative

appeals process. Moreover, this inquiry is significant because, as Plaintiff alleges, it never received

a response from Aetna's legal representative, and ERISA's exhaustion requirement may be waived

"when the participant has filed an administrative appeal from the denial of benefits, but the plan

provider has failed to timely decide it." *Puzzo v. Metro. Life Ins. Co.*, No. 1-5-3190, 2016 U.S.

Dist. LEXIS 40766, at \*10 (D.N.J. March 29, 2016); *see also Lewis-Burroughs v. Prudential Ins.

Co. of Am.*, No. 14-1632, 2015 U.S. Dist. LEXIS 57584, at \*61 (D.N.J. April 30, 2015) (citing

*Mass. Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 144 (1985)).

Contrary to Defendants' assertions, Plaintiff's failure to plead that it complied with the

applicable administrative review procedures under the Plans does not warrant dismissal, as it is

Defendants' burden to show lack of exhaustion. *See Deblasio v. Cent. Metals, Inc.*, No. 13-5283,

2014 U.S. Dist. LEXIS 87666, at \*9 (D.N.J. June 24, 2017) ("Failure to exhaust administrative

remedies is a non-jurisdictional affirmative defense which means [d]efendants bear the burden of

proving it. Moreover, because the exhaustion requirement is an affirmative defense, Plaintiff is not

required to plead facts showing that he exhausted his remedies. As a result, the Court cannot

dismiss Plaintiff's ERISA claim on the basis that [it] failed to plead facts sufficient to establish

[its] exhaustion of administrative remedies.") (citations omitted). Therefore, although the Court

will not dismiss Plaintiff's Complaint on exhaustion grounds at this time, Aetna may renew its

dismissal motion with respect to the issue of exhausting administrative remedies upon submitting

the provisions of the Plans, and other evidence, which govern the appeals process.

Thus, having considered Aetna's arguments, Plaintiff's ERISA claims with respect to the

Plans of the following insureds remain, because they do not contain an anti-assignment provision:

A.K., A.O., C.A., C.W., J.B., K.B., R.F., and Rob M. Moreover, with respect to the five Plans of

the insureds which are not governed by ERISA, only three of them do not include an anti-

assignment provision. Therefore, although Plaintiff's state law claims with respect to these Plans remain, *i.e.,* A.T., A.Y., and S.L., the Court refrains from exercising supplemental jurisdiction over Sleep Tight's claims based on these insureds. *Edwards v. First Surg. "A" of U.M.D.N.J*, No. 2014 U.S. Dist. LEXIS 63448, at *14 (D.N.J. May 7, 2014) ("[W]hen a court has dismissed all claims over which it had original jurisdiction, the supplemental jurisdiction statute grants discretion to decline supplemental jurisdiction over the remaining state law claims.") (citing *Alston v. Kean Univ.*, 549 Fed. Appx. 86, 89 (3d Cir. 2013)); *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 181 (3d Cir. 1999). In addition, because Aetna is not the administrator of the Plan which belongs to M.T., the claims based on that patient are also dismissed from this action. In sum, the Court has jurisdiction over the wrongful denial of benefits under ERISA with respect to the Plans that belong to the following insureds: A.K., A.O., C.A., C.W., J.B., K.B., R.F., and Rob. M. Finally, I note that, with the exception of Aetna Health, Inc.'s place of incorporation, the instant action lacks a relationship to New Jersey. Indeed, Plaintiff is Texas-based firm, and its common law causes of action are asserted pursuant to the laws of that State. Moreover, the insureds received treatment in Texas, wherein Plaintiff's claims, too, arise. The remaining defendants, including both Aetna Inc. and Aetna Life Insurance Company, are neither incorporated in the State of New Jersey, nor headquartered here. Based on the totality of these circumstances, and the Court's concern over whether this is an appropriate forum to litigate these claims, Plaintiff is directed to show cause, in writing, by July 26, 2019, why its claims as to the remaining insureds should not be dismissed on *forum non-conveniens* grounds. *Devine v. LyondellBasell Indus., N.V.*, No. 15-8406, 2016 U.S. Dist. LEXIS 140943, at *8 (D.N.J. Oct. 12, 2016) (raising the issue of forum non-conveniens, *sua sponte*, and instructing the plaintiff to address that doctrine by way of an order to show cause); *JAK Mktg., LLC v. Anoop Aggarwal*, No. 10-5137, 2011 U.S. Dist. LEXIS 14746, at *2 (D.N.J.

Feb. 10, 2011) (raising the issue of *forum non conveniens*, *sua sponte*, and ordering the plaintiff "to show cause why this case should not be dismissed pursuant to the doctrine of *forum non conveniens*"); *Khan v. Delta Airlines, Inc.*, No. 10-2080, 2010 U.S. Dist. LEXIS 82293, at *1 (E.D.N.Y. Aug. 11, 2010) (dismissing the case *sua sponte* on *forum non conveniens* grounds, after the court "became concerned about using judicial resources to adjudicate a case with seemingly little or no connection with" New York).

## IV.    CONCLUSION

For the reasons set forth above, Aetna's motion to dismiss is **GRANTED** in part and **DENIED** in part as follows. The claims relating to G.J., H.H., J.F., J.W., L.F., M.P., R.B., Ri. M., Rog. M., S.B., T.C., P.D., R.T., and M.T. are dismissed; the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims concerning A.T., A.Y., and S.L. The Motion is denied as to the claims relating to A.K., A.O., C.A., C.W., J.B., K.B., R.F., and Rob. M. By July 26, 2019, Plaintiff is directed to show cause, in writing, why its denial of benefits claims in connection with those remaining insureds should not be dismissed on *forum non-conveniens* grounds.


Dated: June 27, 2019

/s/ Freda L. Wolfson
Freda L. Wolfson
United States Chief District Judge
