UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SLEEP TIGHT DIAGNOSTIC CENTER, LLC, | |
| Plaintiff, | Civil Action No.: 18-3556 (FLW) |
| v. | **OPINION** |
| AETNA INC., AETNA HEALTH INC., AND AETNA LIFE INSURANCE COMPANY, | |
| Defendants. | |

**WOLFSON, Chief Judge**:

Plaintiff Sleep Tight Diagnostic Center, LLC, ("Plaintiff" or "Sleep Tight") brings this action against Defendants Aetna, Inc., Aetna Health Inc., and Aetna Life Insurance Company ("Aetna" or "Defendants"), arising from a procedure which it provided to twenty-five patients (the "insureds") who are covered under employee health insurance plans (the "Plans") that Aetna administers.[1] Presently before the Court is a Motion by Plaintiff, pursuant to Local Civil Rule 7.1(i), seeking reconsideration of the Court's June 28, 2019 Opinion and Order, wherein the Court found that (a) Plaintiff's common law claims contained in Counts I - IV of the First Amended Complaint ("FAC") are subject to the express preemption provisions of the Employee Retirement Income Security Act ("ERISA"), and (2) Plaintiff lacked standing to pursue benefits on behalf of thirteen insureds, because their Plans contain enforceable anti-assignment provisions. For the reasons expressed herein, the Court finds that Plaintiff has failed to meet its burden of

---

[1] The insureds include the following individuals: A.K., A.O., C.A., C.W., G.J., H.H., J.B., J.F., J.W., K.B., L.F., M.P., R.B., R.F., Ri. M., Rob. M., Rog. M., S.B., T.C., A.T., A.Y., P.D., R.T., S.L., and M.T.

demonstrating that reconsideration of the prior decision is warranted, and thus, Plaintiff's Motion is **DENIED**.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because the factual background of this matter is set forth in detail in the Court's June 28, 2019 Opinion and Order, I will only recount the necessary facts for the resolution of this Motion. From February 24, 2016 to August 9, 2016, each of the insureds underwent a polysomnography[2] at Sleep Tight, which owns and operates a six-bed facility in Spring, Texas. Before providing this medical procedure for the insureds, Sleep Tight contacted Aetna, the administrator of the Plans, and confirmed its eligibility to be paid as an out-of-network provider, and the availability of benefits for the required treatments for the insureds. Sleep Tight also received information which related to the Plans, in order to verify the amount in benefits payable for services rendered, including: (a) the reimbursement methodology for out-of-network services; (b) the applicable patient cost sharing obligations; and (c) the annual out-of-pocket maximums. *Id*. Despite these representations, Sleep Tight acknowledges that Aetna did not provide it with a guaranty of payment.

After each of the insureds executed an assignment of benefits to Sleep Tight, it administered the polysomnographies and submitted "CMS-1500" claim forms to Aetna, which referenced the assignments and sought more than $445,551.00 in payment for the provided sleep studies. Aetna denied these claims in a document entitled "Explanation of Payment," following which Sleep Tight submitted a written appeal of the adverse benefits determinations to Aetna, in

---

[2]   A polysomnography is a sleep study that diagnoses sleep disorders by recording "brain waves, the oxygen level in blood, heart rate and breathing, . . . eye and leg movements," as well as "sleep stages and cycles to identify if or when sleep patterns are disrupted and why." FAC, ¶ 16.

2

accordance with the advice of Liz, a customer service representative. On June 10, 2016, Sleep Tight received a letter from James C. Crumlish, Esq., whose law firm represents Aetna, in which he instructed Sleep Tight to direct all further inquires to either himself or his colleague, Colin O'Boyle, Esq. Thereafter, on an unspecified date, "Sleep Tight's Administrator" provided Mr. Crumlish with copies of its "provisional accreditation" from the American Academy of Sleep Medicine ("AASM").

On January 8, 2017, after Sleep Tight provided proof of its "continued accreditation" with the AASM, Mr. Crumlish indicated that the claim for healthcare covered benefits would be processed for services rendered as of July 8, 2016, subject to the member's relevant coverage conditions and Aetna's coverage policies. However, because Aetna did not reprocess the disputed claims, Sleep Tight submitted a letter correspondence, through counsel, to Mr. Crumlish on February 7, 2017; therein, Sleep Tight set forth the alleged amount for services due, and it requested information from Aetna that pertained to the adverse benefit determinations. However, because a response was not provided from Mr. Crumlish or his firm, on April 25, 2017, Sleep Tight resubmitted its earlier correspondence to him through email, but these efforts were also ignored.

On March 14, 2018, Sleep Tight filed the instant action against Aetna, alleging wrongful denial of benefits pursuant to ERISA. On October 4, 2018, Sleep Tight amended its Complaint to assert four common law causes of action under Texas law, including: (1) breach of contract; (2) *quantum meruit*; (3) promissory estoppel; and (4) negligent misrepresentation. On June 28, 2019, the Court entered an Opinion and Order, in which I held that ERISA preempted the common law claims, and that Sleep Tight lacked standing to pursue benefits on behalf of the insureds whose

Plans contained enforceable anti-assignment provisions.[3] Now, Sleep Tight moves for reconsideration, contending that the Court erred in rendering both findings.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1 govern motions for reconsideration. More specifically, pursuant to Local Civil Rule 7.1(i), a litigant moving for reconsideration must "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]" L. Civ. R. 7.1(i). Moreover, motions for reconsideration are considered "extremely limited procedural vehicle[s]." *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992). Indeed, requests for reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

A "judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone*, 664 F.3d at 415 (quotations omitted, alterations in original). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation

---

[3] Following the Court's June 28, 2019 Opinion and Order, Sleep Tight's ERISA claims with respect to the Plans of the following insureds remain: A.K., A.O., C.A., C.W., J.B., K.B., R.F., and Rob M.

of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (citation omitted). In other words, "a motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted). Rather, a difference of opinion with the court's decision should be dealt with through the appellate process. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1998). Finally, the Court will only grant such a motion if the matters overlooked might reasonably have resulted in a different conclusion. *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001).

**B. Analysis**

In seeking reconsideration of the prior decision, Sleep Tight first disputes the Court's finding that its common law causes of action are preempted under ERISA. In support, Sleep Tight rehashes an argument which this Court has considered and rejected—it has alleged independent state law claims arising from the representations that Aetna made to Sleep Tight, before the disputed studies were administered to the insureds. Nonetheless, in dismissing its claims on preemption grounds, Sleep Tight complains that the Court "manipulated" Sleep Tight's pleadings and "ignored" two relevant decisions from this District. Second, Sleep Tight contends that the Court erred in finding that it lacked standing to assert ERISA claims as to the Plans of the insureds that contained anti-assignment provisions. Sleep Tight argues that, in making this determination, the Court "inexplicably failed" to consider its previous estoppel arguments, and Aetna's alleged internal policies under which it recognizes assignments of benefits from insured parties to out-of-network providers. Sleep Tight has not provided a sufficient basis to move for reconsideration; rather, it simply disagrees with this Court's prior determinations.

5

Before addressing Sleep Tight's arguments, I first note that "[w]here litigants have once battled for the court's decision, they should neither be required, nor without good reason be permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 952-953 (2d Cir. 1964). In accordance with these principles, the Third Circuit has described the scope of a motion for reconsideration as "extremely limited," enumerating three narrow circumstances, described above, under which such relief is appropriate. *Blystone*, 664 F.3d at 415. But, rather than advance a valid ground for reconsideration, *i.e.*, change in law, new evidence, or manifest error, Sleep Tight's motion papers, in significant part, regurgitate the same failed arguments which this Court has considered and rejected in the prior decision. While Sleep Tight disputes that outcome, its mere disagreement, alone, does not constitute a proper basis upon which to move for reconsideration. *See Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) ("A motion for reconsideration is improper when it is used to ask the Court to rethink what is had already thought through—rightly or wrongly.") (quotations and citations omitted). Thus, while this motion can be denied for attempting to relitigate the Court's prior rulings, the revisitation of these issues would not otherwise change the results of this action. For Sleep Tights benefit, I will, again, explain my rulings.

As discussed at length in the initial decision, § 514(a), the express preemption provision under ERISA, is applicable to "any and all State laws insofar as they . . . relate to any employee benefit plan" covered under the statute. 29 U.S.C. § 1144(a) (emphasis added). State laws "relate to" an ERISA plan if the law either has a "reference to" or has a "connection with" the plan at issue. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293-94 (3d Cir. 2014). Pursuant to *Ingersoll-Rand*, the Third Circuit instructs that a state law claim relates to an employee benefit plan if "the existence of an ERISA

plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan." *1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992) (citations omitted). For the purpose of ERISA preemption, "[s]tate law" constitutes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," 29 U.S.C. § 1144, and the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48, (1987) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983)). "State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012).

Here, in dismissing its state law claims on preemption grounds, Sleep Tight argues that the Court overlooked *Small v. Oxford Health Ins.* and *Glastein v. Aetna*, two unpublished and non-binding decisions. According to Sleep Tight, this Court's holding conflicts with these opinions, wherein state law claims arising from the representations of an insurance corporation to an out-of-network provider were not preempted under ERISA. Plaintiff's Motion for Reconsideration ("Pl.'s Motion"), at 7. Before addressing these decisions, I note that Sleep Tight's initial motion papers referenced *Glastein* in passing, with no substantive examination of the case, and *Small* was not discussed at all.[4] Sleep Tight is well-advised that, on a motion for reconsideration, a litigant is not permitted to raise arguments based on case law that was available at the time the initial motion to

---

[4] Although *Small* was issued shortly after Sleep Tight filed its opposition papers, to the extent that Sleep Tight believed that this decision was relevant, it should have brought the case to the Court's attention through the submission of a letter of supplemental authority. Rather than abide with this practice, Sleep Tight, instead, awaited the Court's June 28, 2019 Opinion an Order, and, after having received an unfavorable result, filed a motion for reconsideration in an attempt to relitigate the issues, citing new authorities. While a litigant is prohibited from using a reconsideration motion for this purpose, I, nonetheless, find that the *Small* decision fails to save Sleep Tight's state law claims from federal preemption under ERISA, for the reasons explained *infra*.

dismiss was pending. While Sleep Tight cannot, now, bolster a position which this Court considered and dismissed through the discussion of case law that could have been addressed previously, I, nonetheless, find that the *Small* and *Glastein* decisions do not otherwise alter the outcome of this case. *In re Human Tissue Prods. Liab. Litig.*, No. 06-135, 2009 U.S. Dist. LEXIS 66619, at *44 (D.N.J. June 1, 2009) (explaining that, on reconsideration, a litigant is precluded from "introduc[ing] new arguments and new caselaw that could have been addressed in [a] moving brief.").

Both *Small* and *Glastein* involve identical facts and circumstances, as the out-of-network plaintiff providers, in those cases, alleged that the defendants preauthorized a medical procedure before it was administered to an insured patient. *Small*, 2019 U.S. Dist. LEXIS 27878, at *2; *Glastein*, 2018 U.S. Dist. LEXIS 162857, at *1-2. However, the defendants refused to reimburse the plaintiff's billings in full, following which the plaintiffs asserted various contractual and quasi-contractual claims against them. *Id*. Although the defendants moved to dismiss these claims on the basis of express federal preemption, these arguments were rejected in both *Small* and *Glastein*. Indeed, the courts reasoned that the plaintiff's claims did not relate to an ERISA-governed plan, because the complaints did "not seek damages pursuant to the terms of [the patient's] benefit plan." *Small*, 2019 U.S. Dist. LEXIS 27878, at *9-10; *Glastein*, 2018 U.S. Dist. LEXIS 162857, at *4 ("It [the complaint] does not allege that payment is due . . . according to the terms of an ERISA plan, or even that any relevant ERISA plan provides reimbursement rates for the out-of-network services provided."). Rather, in support of their state law claims, the plaintiffs alleged that the defendants agreed to compensate them for the provided services at "a fair and reasonable rate," independent of the insured's plans. *Small*, 2019 U.S. Dist. LEXIS 27878, at *4; *Glastein*, 2018 U.S. Dist. LEXIS 162857, at *4 ("[T]he [c]omplaint states that [the plaintiff] is entitled to recover

. . . normal and reasonable charges . . . ."). Therefore, because "nothing" in the complaints required the courts to "consider the terms of [the] patients benefit plan[,]" the plaintiffs, there, were allowed to pursue their state law claims against the insurance defendants. *Small*, 2019 U.S. Dist. LEXIS 27878, at *9-10; *Glastein*, 2018 U.S. Dist. LEXIS 162857, at *6 ("[T]he [c]omplaint provides no reason why the [c]ourt would need to reference an ERISA plan to adjudicate the [p]laintiff's claims").

Unlike the state law claims asserted in *Small* and *Glastein*, the disputed causes of action, here, arise not from an independent contract with an insurance provider, but from a purported preauthorization agreement which implicates the terms of the Plans. As already explained in the initial decision, prior to administrating the sleep studies, Sleep Tight contacted Aetna and confirmed that it was eligible to provide the services rendered under the relevant Plans. Significantly, Aetna did not agree to compensate Sleep Tight for "fair and reasonable rates" or "normal and reasonable charges," *i.e.*, independent reimbursement rates. Instead, Aetna agreed to compensate Sleep Tight in accordance with the "reimbursement methodology for out-of-network services" set forth in the Plans of the insureds. This much, Sleep Tight's briefing so admits: "[i]n the [First Amended Complaint,] Plaintiff's pleaded that the Plans dictate the services Sleep Tight wished to perform *and the payment Sleep Tight expected to receive* . . . ."[5] Pl.'s Motion, at 10 (emphasis added). In fact, Sleep Tight's state law claims seek $445,551.00 in damages, the exact amount which it sought to collect from Aetna before the initiation of this action, pursuant to the reimbursement rates specified in the Plans. That Sleep Tight's claimed damages are equivalent to

---

[5] Although Sleep Tight contends that its claims were denied pursuant to certain "credentialing requirements," separate and apart from the Plans of the insureds, it cannot dispute that those agreements governed the pertinent terms of compensation, and, therefore, its state law claims "relate to" or, at a minimum, share a "connection with" the Plans. This connection suffices to trigger preemption.

9

the alleged amount due under the Plan rates, as opposed to, for example, a figure which represents normal and reasonable charges or fair and reasonable rates, further evidences that its state law claims do not arise from an independent preauthorization agreement. Because the Court cannot adjudicate Sleep Tight's claims without referencing the Plans, its state law claims cannot escape federal preemption under ERISA.[6]

In addition, although Sleep Tight continues to argue that the claims of a health provider against an insurer do not implicate the objectives of ERISA, *i.e.*, protecting participants and beneficiaries, courts within this district have found that federal preemption is proper in cases where an out-of-network provider asserts state law claims for alleged preauthorized, but unpaid, medical services. *See*, *e.g.*, *Atl. Shore Surgical Assocs. v. United Healthcare/Oxford*, No. 18-9506, 2019 U.S. Dist. LEXIS 14413 (D.N.J. Jan 23. 2019); *Atl. Shore Surgical Associates v. Horizon Blue Cross Blue Shield*, No. 17-07534, 2018 U.S. Dist. LEXIS 90734 (D.N.J. May 31, 2018); *Advanced Orthopedics and Sports Medicine Institute v. Empire Blue Cross Blue Shield*, No. 17-8697, 2018 U.S. Dist. LEXIS 96814 (D.N.J. June 7, 2018); *Glastein v. Horizon Blue Cross Blue Shield of America*, No. 17-7983, 2018 U.S. Dist. LEXIS 135911 (D.N.J. Aug. 13, 2018). Therefore, my conclusion that Sleep Tight's state law claims are subject to the express preemption provisions under ERISA remains unchanged, and the motion for reconsideration on this ground is denied. I turn, next, to the dismissal of Sleep Tight's ERISA causes of action against Aetna, asserted on behalf of the Plans of the insureds which contain anti-assignment provisions.

---

[6] In the First Amended Complaint, Sleep Tight admits that the authorization from Aetna "was not understood to be a guaranty of payment . . . ." FAC, ¶ 24. Significantly, in *Glastein*, the case upon which Plaintiff relies in moving for reconsideration, the court explained that such facts would "suggest that the claim for payment [is] based off the patient's ERISA plan rather than the authorization obtained by the provider to perform surgery." *Glastein*, 2018 U.S. Dist. LEXIS 162857, at *6.

At the outset, I note that, while Sleep Tight argues that the Court "erred by simply mashing" its estoppel and waiver arguments, Plaintiff's original motion papers lumped these two theories together, without addressing the required elements for a showing of estoppel in the context of an ERISA action—an obligation that counsel does not meet, even in moving for reconsideration. Moreover, Sleep Tight's original estoppel argument was confined to a single, four-sentence paragraph which relied on the same factual basis to establish waiver. Indeed, the basis for both equitable defenses overlapped, and the Court considered and rejected Sleep Tight's estoppel argument in a footnote, because a lengthier discussion was not warranted. Unsatisfied, Sleep Tight rehashes its arguments from its original papers and seeks to relitigate estoppel through the guise of a motion for reconsideration. While such a tactic is prohibited, the revisitation of this issue would not otherwise change the outcome here. *See Bermingham v. Sony Corp. of America, Inc.*, 820 F. Supp. 834, 856-57 (D.N.J. 1992), *aff'd*, 37 F.3d 1485 (3d Cir. 1994) ("A motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before.") (citations omitted); *Peck v. Donovan*, No. 07-5500, 2012 U.S. Dist. LEXIS 23263, at *6 (D.N.J. Feb. 22, 2012) ("A motion for reconsideration is not a vehicle through which a dissatisfied party may relitigate his case.") (citing *P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

The Third Circuit has instructed that, in order to succeed on an equitable estoppel claim in the context of an ERISA action, a litigant must prove the following three elements: "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994) (citing *Smith v. Hartford Ins. Group*, 6 F.3d 131, 137 (3d Cir. 1993)); *accord Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991). The Third Circuit has also

provided some guidance in considering the last element of "extraordinary circumstances," explaining:

> We have never "clearly defined 'extraordinary circumstances,'" but instead "rely[] on case law to establish its parameters." *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996). For example, we have found extraordinary circumstances where there are "affirmative acts of fraud or similarly inequitable conduct by an employer[,]" or a "network of misrepresentations that arises over an extended course of dealing between parties[,]" and we also consider "the vulnerability of particular plaintiffs." *Id. See also Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 304 (3d Cir. 2008) (holding extraordinary circumstances when considering "repeated affirmative misrepresentations, combined with [plaintiff's] diligence" "over an extended course of dealing").

*Kapp v. Trucking Emps. of N. Jersey Welfare Fund, Inc.*, 426 F. App'x 126, 130 (3d Cir. 2011). Moreover, "extraordinary circumstances," the Third Circuit has held, "generally involve acts of bad faith on the part of the [insurer], attempts to actively conceal a significant change in the plan, or commission of fraud." *Burstein v. Ret. Account Plan For Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d Cir. 2003) (citing *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997)).

Here, Sleep Tight contends that Aetna should be estopped from invoking the anti-assignment provisions in the plans, for the same reasons which were provided in the original papers: the law firm representing Aetna requested and confirmed the receipt of its credentialing materials, and indicated that it would process a portion of the submitted claims.[7] Pl.'s Motion, at 13. In addition, Sleep Tight maintains that these interactions resulted in its detrimental reliance, as it must now contact all of the insured patients and "hand them each a five-figure bill." *Id.* at 14.

---

[7] As I explained in the initial decision, Aetna was under no obligation to inform Sleep Tight of the anti-assignment provisions in the Plans of the insureds. *See Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 607 (D.N.J. 2011); *Payment Systs. v. Meridian Bank*, 18 F. Supp. 2d 543, 548 (E.D. Pa. 1998).

12

However, without reaching the issue, even if the first two elements of equitable estoppel are satisfied here, Sleep Tight's claim still fails, because it has not shown "extraordinary circumstances" within the meaning of controlling Third Circuit precedent. Indeed, Sleep Tight has neither alleged nor argued that Aetna acted in bad faith or attempted to conceal pertinent information. Nor does Sleep Tight maintain that Aetna made repeated affirmative misrepresentations over time; rather, according to Sleep Tight, Aetna represented that it would process the submitted claims on no more than one occasion, before ceasing communication with Sleep Tight in connection with Sleep Tight's administrative appeals. No other alleged misrepresentations are set forth in the First Amended Complaint or Sleep Tight's brief. Therefore, because Sleep Tight cannot establish all three elements to show estoppel, Aetna is entitled to enforce the anti-assignment provisions contained in the Plans of the insureds, as I have so found previously.

Finally, Sleep Tight maintains that the Court has not considered its allegation that "Aetna has an internal policy that recognizes and accepts assignments of benefits from out-of-network providers when indicated on standard claim forms." Pl.'s Motion, at 15. Although pled, the Court was not required to accept this threadbare allegation, asserted without support, at the dismissal stage of litigation. *See Polhill v. FedEx Ground Package Sys.*, 604 Fed. Appx. 104, 107 (3d Cir. 2015) (explaining that,"[c]onclusory allegations are insufficient to survive a motion to dismiss.") (citing *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)); *see also Kriss v. Fayette County*, 504 Fed. Appx. 182, 186 (3d Cir. 2012). Indeed, Sleep Tight has not explained how this particular alleged policy impacts the anti-assignment provisions in the Plans of the insureds; rather, Sleep Tight suggests that Aetna, as the plan administrator, has the authority to abrogate or disregard the anti-assignment provisions in the plan documents—an unsubstantiated

position which this Court cannot accept. Nonetheless, assuming that Aetna is authorized to act in such a manner, Sleep Tight has not explained or provided sufficient detail as to these purported policies in its pleadings, nor has it provided documentation, such as the "standard claim form" that it submitted to Aetna during the claims process, which includes language to reflect Aetna's purported practices. Instead, for support, Sleep Tight cites to an argument, raised in the footnote of a legal brief which its counsel filed in an unrelated lawsuit involving Aetna—an argument which the presiding judge in that case has not adopted. It is entirely inappropriate for counsel to cite to their own arguments in a different action as legal support for the position that Sleep Tight has advanced in this case. Therefore, Sleep Tight's Motion for reconsideration on these grounds is denied.

## III. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff's Motion for reconsideration is **DENIED**.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge